UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCINE HUERTA,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 18-cv-00563-SVK<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 24, 25, 26, 28 |

Plaintiff Francine Huerta ("Plaintiff") seeks review of a final decision of Defendant Acting Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Plaintiff presents four issues for review: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the opinion of the treating physician and examining physicians; (2) whether the ALJ properly evaluated Plaintiff's testimony; (3) whether the ALJ properly evaluated Plaintiff's husband's testimony and (4) whether the ALJ's decision under Step 4 and Step 5 is supported by substantial evidence. ECF 24 ("Pl. MSJ"). Plaintiff further contends that each error undermines the ALJ's ultimate findings that Plaintiff has not been under a disability within the meaning of the Social Security Act from July 3, 2012, through the date of last insured. *Id.* As a result, Plaintiff asks this Court to reverse the ALJ's decision and award benefits. *Id.* at 13. Before the Court are the Parties' cross-motions for summary judgment. *Id.*; ECF 25 ("Def. MSJ"); ECF 26 ("Pl. Reply").

Having considered the cross-motions for summary judgment, the relevant law and the record in this case,[1] the Court finds that the ALJ applied the proper legal standards and that his

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

determinations are supported by substantial evidence. The Court therefore **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion for summary judgment.[2] As set forth more thoroughly below, the ALJ's findings are supported by substantial evidence, and more particularly, the ALJ provided sufficient reasons for discrediting certain physician testimony, Plaintiff's testimony and Plaintiff's husband's testimony.

## I. PROCEDURAL BACKGROUND

On April 28, 2014, Plaintiff filed a Title II application for disability benefits with an alleged onset date of July 3, 2012. Administrative Record ("AR") at 17. Plaintiff is now 53 years old. AR 43. She has at least a high school education and can communicate in English. AR 34. Prior to her accident, she worked as an evidence specialist and most recently as a patient services representative. AR 65–66. Her disability arises from a knee injury she suffered from slipping and falling while working as a patient services representative. AR 46–47. Following her knee surgery, Plaintiff began suffering from hemiplegic migraines. She applied for disability benefits based on a combination of impairments including symptoms from her knee injury and hemiplegic migraines. AR 212–13.

After Plaintiff's claims were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. AR 116–17. ALJ E. Alis held a hearing on May 10, 2016, at which Plaintiff, who was represented by an attorney, testified. AR 40–79. A vocational expert also testified. *Id.* On September 26, 2016, the ALJ issued a decision finding that Plaintiff has not been under a disability as defined in the Social Security Act from the alleged onset date of July 3, 2013, through March 31, 2016, the last date insured. AR 17–35. The Appeals Council denied Plaintiff's request for review on November 24, 2017. AR 1–6.

On January 25, 2018, Plaintiff filed a timely civil action in this Court. ECF 1. All parties have consented to the jurisdiction of a magistrate judge. ECF 13; ECF 15.

////

---

[2] The Court has received Defendant's resubmission of a certified, paper copy of the transcript of the administrative record. Accordingly, the Court finds that the Parties' stipulation for an extension to resubmit a copy of the record (ECF 28) is moot.

2

## II. LEGAL STANDARDS

### A. Standard of Review

This Court has the authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (citation and internal quotation marks omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* "Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (citations and internal quotation marks omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

Even if the ALJ commits a legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The Court is instead "constrained to review the reasons the ALJ asserts." *Id.* (citation omitted).

### B. Standard for Eligibility for Disability Benefits

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ must employ a five-step sequential analysis, determining (1) whether the claimant is doing substantial gainful activity; (2)

whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity (i.e., what a claimant can still do despite her limitations), the claimant can still do her past relevant work; and (5) whether the claimant can make an adjustment to other work. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 and n.5 (9th Cir. 2014). The burden of proof is on the claimant at Steps 1 through 4 but shifts to the Commissioner at Step 5. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### III. DISCUSSION

The ALJ employed the established five-step framework for evaluating disability claims as set forth below. It is the ALJ's findings in Step 4 and the resultant conclusions in Step 4 and Step 5 which are relevant to the pending motions.

- **Step 1:** The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of July 3, 2012, through her date of last insured of March 31, 2016. AR 19.
- **Step 2:** The ALJ concluded that Plaintiff has the following severe impairments: left knee chondromalacia (status post left knee arthroscopy, partial medial meniscectomy, medial femoral chondroplasty and plica resection); and obesity (20 C.F.R. § 404.1520(c)). AR 19. The ALJ also found that Plaintiff's mental impairments (AR 20), hemiplegic migraines (AR 23), fibromyalgia (*id.*), gastroesophageal reflux disease (GERD) (AR 22) and mild chronic gastritis (*id.*) are non-severe through the date last insured.
- **Step 3:** The ALJ held that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526). AR 24.
- **Step 4:** The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that: Plaintiff can stand and/or walk for a total of four hours an eight-hour workday; Plaintiff has no sitting

limitations but requires the option to sit or stand at will without leaving the workstation or being off task; Plaintiff can occasionally push and pull with her left lower extremity; Plaintiff can never climb ladders, ropes or scaffolds; the claimant can occasionally stoop, kneel, crouch, crawl, balance and climb ramps and stairs; and Plaintiff must avoid all exposure to dangerous moving mechanical parts and unprotected heights. AR 24. Based Plaintiff's residual functional capacity, the ALJ found that Plaintiff was capable of performing her past relevant work as a hospital admitting clerk through the date last insured. AR 33

- **Step 5:** Although the ALJ found that Plaintiff was able to perform her past work, the ALJ made alternative findings under Step 5, concluding that considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 34. In particular, the ALJ adopted the testimony of the vocational expert and found that Plaintiff could perform the requirements of a receptionist. AR 35.

Plaintiff asserts that the ALJ made four errors that warrant reversal: (1) the ALJ failed to articulate clear and convincing reasons for rejecting the testimonies of her treating physician, Dr. Elaina Guerin, treating physician, Dr. H. Michael Jaffin,[3] and examining physician, Dr. Oscar Abeliuk, (2) the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her symptoms, (3) the ALJ improperly rejected Plaintiff's husband's lay testimony and (4) the ALJ failed to support his opinion in Step 4 and Step 5 with substantial evidence. ECF 24 at 8–18.

### A. Physician Testimony

Plaintiff argues that the ALJ improperly disregarded the findings of Dr. Guerin, Dr. Jaffin and Dr. Abeliuk. ECF 24 at 8–12. Plaintiff contends that these opinions establish that she could not sustain even sedentary work on a regular and continuing basis, and that the ALJ's opinion fails

---

[3] Plaintiff categorizes Dr. Jaffin as an examining doctor, but Dr. Jaffin is an orthopedic surgeon, who performed Plaintiff's knee surgery and treated her during her post-operation recovery. AR 502–3. Accordingly, the Court finds that Dr. Jaffin is more appropriately labeled as a treating physician.

5

to support the ALJ's rejection of these opinions with clear and convincing reasons. *Id.* at 12.

### 1. The ALJ's Analysis of the Physicians' Opinions

The medical records in this case are complex because of the number of physicians who have treated Plaintiff, the duration of Plaintiff's treatment and the number of medical complications from which Plaintiff suffers. The ALJ's opinion provides a detailed account of these medical records (AR 20–23; AR 25–30), and the ALJ's ultimate conclusions can be grouped into three general categories: (1) Plaintiff's residual capacity given her the complications with her left knee, (2) Plaintiff's mental impairments and (3) Plaintiff's non-severe physical impairments, which includes Plaintiff's recurring migraines. The Court reproduces the ALJ's conclusions below:

(1) The ALJ assessed Plaintiff's residual capacity given her left knee impairments as follows:

> In summary, the claimant's medical records reflect a history of a left knee surgery in October of 2012, with repeated observations by her orthopedic surgeon [Dr. Jaffin] of an ability to walk "well" or "reasonably well" and to perform activity such as "jumping up and down" and squatting after that surgery and through the end of 2013. Thereafter, the claimant's medical records depict her worsening left knee symptom complaints, with supporting exam findings of reduced range of motion and crepitus and imaging studies depicting moderate left knee chondromalacia. Additionally, Dr. Abeliuk reported limited lumbar range of motion, positive straight leg raise testing on the left, and some postural and gait-related limitations in early 2016. The totality of the evidence reasonably supports a limitation to less than the full range of sedentary work, with a sit-stand option. However, it does not support the claimant's allegations of entirely disabling symptoms and limitations from her physical impairments.

AR 28.

(2) The ALJ concluded that Plaintiff's mental impairments are non-severe:

> Under the totality of the evidence, I find that the claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. I further find that the claimant's mental impairments (including but not limited to depression, panic disorder and anxiety disorder) have no more than

6

minimally impaired her ability to perform work activities over any period of at least 12 consecutive months since the date of alleged onset of disability. Therefore, these impairments were non-severe through the claimant's date last insured for Title II disability benefits.

AR 21.

(3) The ALJ also found that Plaintiff's mental impairments, hemiplegic migraine headaches, fibromyalgia, GERD and mild chronic gastritis are non-severe:

> Under the totality of the evidence, I find that the claimant's migraine headaches, fibromyalgia, GERD, and mild chronic gastritis have not more than minimally impaired her ability to perform work activities over any period of at least 12 consecutive months since the date of alleged onset of disability.

AR 23.

Based on these conclusions, the ALJ's opinion then discusses the credit that the ALJ gave each physician's opinion. Plaintiff's appeal focuses on the ALJ's findings regarding a subset of her medical complications. Plaintiff first argues that the ALJ improperly rejected the opinions of Plaintiff's treating doctor, Dr. Guerin, regarding the medical impairments caused by Plaintiff's migraines. ECF 24 at 9-10. Second, Plaintiff challenges the ALJ's rejection of the opinions of Dr. Jaffin and Dr. Abeliuk, Plaintiff's treating and examining physician respectively. *Id.* at 10–12. These findings relate to Plaintiff's residual functional capacity considering Plaintiff's medical complications with her left knee. The Court summarizes the medical evidence regarding these two issues according to the physician making the findings.

### i. Dr. Elaina Guerin

Dr. Guerin, Plaintiff's treating doctor, diagnosed Plaintiff with complex migraines, fibromyalgia, chest pain, GERD, dizziness, fatigue, papulations and neck pain. AR 831. She also opined that Plaintiff would have to take three to four unscheduled, one-hour breaks during an eight-hour workday. AR 833. Dr. Guerin further stated that Plaintiff's impairment symptoms would result in Plaintiff missing work more than four times a month. *Id.* The ALJ gave her opinion "little weight," finding that "her severely restrictive medical assessment (which would effectively preclude all work activity) is not reasonably supported by the balance of the evidence, and thereby more closely fits the profile of a treatment provider who is advocating for her patient." AR 30-31.

### ii. Dr. H. Michael Jaffin

Dr. Jaffin performed orthopedic surgery on Plaintiff's left knee and conducted numerous post-operation evaluations. AR 502–03. Prior to her surgery, Dr. Jaffin indicated that Plaintiff should avoid "prolonged standing, squatting, or bending." AR 529. But in Plaintiff's post-surgery evaluations, Dr. Jaffin regularly observed that Plaintiff "walks well," "can toe and heel walk," "can jump up and down" as well as at least "partially squat and recover." AR 488; AR 489; AR 490; AR 491; AR 492; AR 495; AR 504.

Dr. Jaffin consistently opined that Plaintiff should remain off work from July 11, 2012, to December 4, 2013. AR 483–84; AR 486; AR 488–92; AR 495; AR 498–99; AR 501; AR 504; AR 506–7; AR 515; AR 529.[4] On December 4, 2013, Dr. Jaffin observed that Plaintiff "walks reasonably well," "has no joint tenderness" but "has some patellofemoral compression tenderness." AR 483. Dr. Jaffin recommended another left knee arthroscopy and opined that Plaintiff remains unable to work. *Id.*

The ALJ relied heavily on Dr. Jaffin's treatment observations but gave Dr. Jaffin's various opinions regarding Plaintiff's ability to work "relatively little weight." AR 31. The ALJ noted that "the issue of disability is expressly reserved to the Commissioner." *Id.* (citing 20 C.F.R. § 404.1527). The ALJ further noted that Dr. Jaffin supported his opinion with a "specific quantitative function-by-function assessments" on only one occasion. *Id.* In that report, Dr. Jaffin failed to "define what he meant by 'prolonged'" standing, squatting and bending. *Id.*

### iii. Dr. Craig Wiseman and Dr. Wesley Chan

Dr. Craig Wiseman examined and treated Plaintiff regarding her left knee pain on June 26, 2014, and November 16, 2015. AR 838–46. In June 2014, Dr. Wiseman opined that the Plaintiff "is only able to tolerate modified work restrictions." AR 843. Dr. Wiseman further opined the Plaintiff cannot stand for over four hours in an eight-hour workday and cannot engage in prolonged bending, lifting, stooping or squatting. AR 846. Dr. Wiseman found no change in Plaintiff's condition in November 2015. AR 845.

---

[4] A few of Dr. Jaffin's examination notes do not make an indication regarding her ability to return to work. *See e.g.* AR 491.

8

Dr. Wesley Chan examined Plaintiff on July 30, 2014, and declared Plaintiff permanent and stationary. AR 821. The ALJ noted that Dr. Chan cited and reproduced Dr. Wiseman's work restrictions (AR 822), which the ALJ considered as evidence that Dr. Chan "adopted and agreed with Dr. Wiseman's opinion." AR 31.

The ALJ gave "great weight to Dr. Wiseman's medical assessment (as supported by Dr. Chan) as affirmatively detailed, while also noting that the medical evidence supports additional appropriate postural and environmental restrictions as well as a sit/stand option." AR 31.

#### iv. Dr. Oscar Abeliuk

Dr. Abeliuk provided two reports based on personal observations of Plaintiff and a review of her medical records (AR 858): one in June 2013 and a second in March 2016. In both reports, Dr. Abeliuk opined that the Plaintiff was restricted to no "heavy" lifting, no climbing of "stairs or ladders," no kneeling, squatting or walking on uneven terrain and no "prolonged" standing or walking. AR 873; AR 945–46. In June 2013, Dr. Abeliuk opined that Plaintiff would need a ten to fifteen-minute break if she has to stand or walk longer than one hour. AR 873. In March 2016, he found that Plaintiff requires a ten-minute break if she must stand or walk longer than fifty minutes. AR 945. Finally, Dr. Abeliuk noted that Plaintiff "might be able to return to work in a sedentary position" but was unsure if her employer offered that option. AR 873.

The ALJ gave "partial weight to Dr. Abeliuk's medical assessments" noting that Dr. Abeliuk's "limitation to sedentary exertional work, with rest periods in the event of prolonged standing or walking, finds some support in the medical evidence." AR 32. The ALJ found that "Dr. Abeliuk essentially proposed a sit/stand option," and that "the totality of the evidence more reasonably supports a sit/stand option such that the claimant requires the option to simply sit or stand at will without leaving the workstation or being off task, with total standing and/or walking limited to up to 4 hours in an 8-hour workday." *Id.* However, the ALJ rejected "Dr. Abeliuk's restrictions to "no" climbing of stairs, stooping (bending), kneeling, crouching (squatting), and walking on uneven terrain [as] overly restrictive." *Id.*[5]

---

[5] The ALJ noted that Dr. Abeliuk inaccurately represented the functional limitations that Dr. Chan described from Dr. Wiseman's June 2014 assessment. AR 31–32. Dr. Chan did not restrict

9

### v. State Agency Physicians

Regarding Plaintiff's physical impairments, State agency physician Dr. J. Zheutlin concluded that Plaintiff could perform light work with some additional restrictions and that Plaintiff's allegations regarding the severity of her symptoms are "not fully supported by the objective evidence in the file." AR 88–91. State agency physician Dr. N.J. Rubaum concurred with these findings. AR 100–03. The ALJ partially credited these findings. AR 30. The ALJ gave "great weight to their opinions regarding the claimant's postural and environmental functionality," but the ALJ gave "somewhat less weight to the state agency physicians' exertional assessments" because "the balance of the evidence adequately supports a somewhat more restrictive residual functional capacity limitation to less than the full range of sedentary work." AR 30.

As for Plaintiff's mental impairments, State agency physician Dr. Jaine Foster-Valdez observed that "generally [Plaintiff's] mental status reports are unremarkable" and concluded that Plaintiff's mental impairments were non-severe. AR 86. Dr. Foster-Valdez opined that Plaintiff had mild restrictions in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. AR 87. State agency physician Dr. F.L. Williams set forth the same findings and concluded that Plaintiff's mental impairments were non-severe. AR 98–99. The ALJ gave these two opinions "great weight." AR 30. The ALJ concluded that "the balance of the evidence reasonably supports their medical opinions, as the claimant's mental status examinations have been generally unremarkable over her treatment history," and "her insight, judgment, memory, attention, and concentration have repeatedly been assessed as normal." AR 30 (citing AR 619–20; AR 670–72; AR 701–02; AR 708–10; AR 910; AR 933).

### 2. Legal Background

The Ninth Circuit distinguishes between the opinions of physicians based on three categories: "(1) those who treat the claimant (treating physicians); (2) those who examine but do

---

Plaintiff to "[n]o squatting, climbing or kneeling;" instead, Dr. Chan stated, as Dr. Wiseman assessed, that Plaintiff could not perform "prolonged bending, lifting, stooping, or squatting." AR 31–32; AR 822; AR 846; AR 925.

not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Court gives more weight to the opinions of physicians who treat the claimant than to the opinions of those who do not. *Id.* The opinion of an examining physician likewise warrants greater weight than the opinion of a nonexamining physician. *Id.*

An ALJ may only "disregard the opinion of a treating physician" after providing "clear and convincing reasons for doing so if the treating physician's opinion is not contradicted by another doctor." *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (citation and internal quotation marks omitted). When another physician's findings conflict with the treating physician's opinion the ALJ must state "'specific and legitimate reasons' supported by substantial evidence in the record for" rejecting the treating physician's opinion. *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). The same standards apply to the ALJ's consideration and rejection of an examining physician's opinion. *Id.* at 830–31 (citations omitted).

An ALJ must also consider the opinions of state agency medical or psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1). Their findings and the findings of other "nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (citation omitted). But their opinions "should be discounted and [are] not substantial evidence when contradicted by all other evidence in the record." *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir.1984)) (internal quotation marks omitted). Thus, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831.

### 3. The Standard that the ALJ Must Meet When Rejecting the Physicians' Opinions

Plaintiff contends that the clear and convincing standard applies because nontreating, nonexamining physician opinions are not sufficient to contradict the opinion of a treating

11

physician. ECF 26 at 2 (citing *Gallant v. Heckler*, 753 F.2d at 1454).[6] There appears to be some ambiguity under Ninth Circuit precedent regarding whether the unsupported opinion of a nontreating, nonexamining physician constitutes sufficient evidence to find that a treating physician's opinion is contradicted and thus trigger the specific, legitimate reasons standard. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (applying the clear and convincing standard where the only conflicting evidence is the unsupported opinions of the non-examining state agency physicians); *But see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (applying the specific, legitimate reasons standard "[w]here . . . a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician") (citations omitted).

Here, the Court does not need to resolve this ambiguity. As further discussed below, evidence in the record supports the nontreating, nonexamining physicians' opinions regarding the impairments from both Plaintiff's left knee complications and migraines. Thus, the specific, legitimate reasons standard applies. *See Andrews*, 53 F.3d at 1042 (holding the Court was "not obliged to inquire whether the ALJ failed to give clear and convincing reasons for rejecting" the examining physicians opinions where "there is legitimate conflicting testimony by" a nontreating, nonexaming physician and the claimant). The Ninth Circuit has "consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based in part on the testimony of a nontreating, nonexamining medical advisor." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted).

### 4. The ALJ's Rejection of Dr. Guerin's Testimony

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting Dr. Guerin's opinion regarding the impairments caused by her complex migraines. ECF 24 at 10. In particular, Plaintiff argues that the ALJ improperly focused on what Plaintiff can do when having a good day rather than her inability to sustain adequate mental and physical functioning

---

[6] Plaintiff also cites *Winans v. Bowen*, 853 F.2d 643 (9th Cir. 1987). However, in *Winans*, the Ninth Circuit applied the "specific, legitimate reasons" standard because the examining physician's testimony contradicted the treating physician's opinion. *Id.* at 647.

12

due to the frequency of her bad days. *Id.* Plaintiff additionally argues that the ALJ provided no evidence for the ALJ's assertion that Dr. Guerin has taken on an improper role as an advocate for Plaintiff. *Id.*

The ALJ gave specific legitimate reasons for rejecting Dr. Guerin's opinions regarding the impairments caused by Plaintiff's complex migraines. First, the ALJ noted that medical testing such as a brain MRI in January 2014 (AR 615), a bilateral carotid ultrasound study (AR 750–51) and an EEG (AR 618) did not reveal any medical issues. AR 22-23. Second, treatment records also demonstrate that Plaintiff's complaints regarding her migraines were inconsistent. AR 23 (noting that after January 2013, Plaintiff did not raise additional migraine symptoms with Dr. Jaffin). Third, Dr. Alben C. Lui, who examined Plaintiff regarding her complex migraines, remarked that Nortriptyline made her headache symptoms "less intense" and that Plaintiff was able to care for her seven-year-old daughter. AR 23 (citing AR 615–16). Third, three other examining or treating physicians, Dr. Wiseman, Dr. Chan and Dr. Abeluik opined that Plaintiff was capable of higher levels of work activity. Specifically, Dr. Abeluik reviewed Plaintiff's medical records, including her treatment records regarding her migraines. Although Dr. Abeluik noted that Plaintiff exhibited "several" hemiplegic migraine attacks since her surgery, Dr. Abeluik did not opine that Plaintiff's migraines warranted any additional work restrictions—only further study. AR 941–42 (observing that Plaintiff "has had some conflicting counseling and recommendations regarding this issue by three different neurologists at Kaiser") (emphasis omitted). Fourth, the ALJ also cited Plaintiff's "largely unremarkable" mental status exam findings over her treatment history and her ability to drive as further evidence that Dr. Guerin's assessment was too restrictive. AR 31 (citing AR 619–20; AR 670–72; AR 701–2; AR 708–10; AR 933). All of the foregoing evidence contradicts Dr. Guerin's "severely restrictive medical assessment (which would effectively preclude all work activity)" and supports the ALJ's assertion that she appears to be advocating for her patient. AR 30-31.

A reasonable factfinder could reach a different conclusion regarding Plaintiff's residual functional capacity given her complex migraines and adopt Plaintiff's logic that the evidence in the record showing a lower level of impairment is simply evidence from Plaintiff's "good days."

However, a reasonable factfinder could also conclude the opposite—that the inconsistent evidence regarding Plaintiff's migraine symptoms indicates that she can sustain a greater level of work functioning. The ALJ has reached the latter conclusion. Because the ALJ has supported that conclusion with specific, legitimate reasons, as outline above, the Court must respect that decision. *See Andrews*, 53 F.3d at 1039–40 (noting that a court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

### 5. The ALJ's Rejection of Dr. Jaffin's Findings Regarding Plaintiff's Ability to Work

Plaintiff argues that the ALJ failed to properly address Dr. Jaffin's opinion that Plaintiff could not work for eighteen months between July 2012 and December 2013. ECF 24 at 10. Plaintiff also contends that the ALJ improperly rejected Dr. Jaffin's opinion that Plaintiff cannot engage in prolonged standing, which would mean that Plaintiff cannot stand long enough to make it through an eight-hour work day. *Id.* at 11.

Here, the ALJ properly supported the rejection of Dr. Jaffin's work restrictions by citing their lack of specificity. AR 31. Federal regulations provide that "medical source opinions on issues reserved to the Commissioner," such as whether a Plaintiff is "unable to work," "are not medical opinions." 20 C.F.R. § 404.1527(d) (internal quotation marks omitted). The ALJ noted that Dr Jaffin "made no specific quantitative function -by-function assessments" of Plaintiff's "work-related functionality." AR 31. Dr. Jaffin's conclusions regarding Plaintiff's ability to work in connection with her worker's compensation claim are largely unspecific, often simply involving checking a box to indicate that Plaintiff should remain off work. *See e.g.* AR 484. As a result, the ALJ could not determine the standard that Dr. Jaffin applied or compare his findings to federal disability standards. The ALJ also noted that Dr. Jaffin only opined once that the Plaintiff should avoid "prolonged" standing, squatting and stooping. That opinion came in July 2012, prior to Plaintiff's surgery, and Dr. Jaffin did not define what he meant by "prolonged" activity. As the ALJ indicated, that opinion provides little insight into Plaintiff's post-operation capacities. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

14

1 supported by clinical findings.") (citations omitted).

2 Further, as the ALJ detailed throughout the opinion, Dr. Jaffin's non-specific work prohibitions are countered by Dr. Jaffin's more detailed observations regarding Plaintiff's symptoms and ability to "walk[] well," "toe and heel walk," "jump up and down" as well as at least "partially squat and recover." AR 488; AR 489; AR 490; AR 491; AR 492; AR 495; AR 504. Such findings are inconsistent with a complete prohibition on work. *See Morgan*, 169 F.3d at 603 (9th Cir. 1999) (finding that "internal inconsistencies within" a doctor's report "also constitute relevant evidence"). And as the ALJ noted, these observations are consistent with Dr. Wiseman's, Dr. Chan's and Dr. Abeluik's opinions. AR 26–27. Accordingly, the ALJ provided specific, legitimate reasons for rejecting Dr. Jaffin's opinion that Plaintiff should not return to work and his July 2012 opinion that she should avoid prolonged standing, squatting and stooping.

### 6. The ALJ's Interpretation of Dr. Abeliuk's Opinion

Plaintiff argues that Dr. Abeluik's opinion that Plaintiff would need a ten-minute break after fifty minutes of standing is not necessarily consistent with a sit/stand option. ECF 24 at 11. Plaintiff argues that Dr. Abeluik's opinion does not clarify whether Plaintiff would have to take her ten-minute break away from her work station. *Id.* According to Plaintiff, such a distinction is important, because the vocational expert testified that Plaintiff would be disabled if she had to take her break away from the work station. *Id.* Plaintiff argues that the ALJ should have fully and fairly developed the record by seeking clarification from Dr. Abeluik on this point. *Id.* at 11–12.

The ALJ did not err in concluding that Dr. Abeluik's opinion that Plaintiff would need a ten-minute break after fifty minutes of standing or walking is "essentially" a "sit/stand option." AR 32. Dr. Abeluik's suggested work limitations regarding Plaintiff's ability to stand and walk relate to her physical impairments. AR 945–46. Accordingly, it is unclear why Plaintiff would have to take a break away from her work station, instead of simply a break from those activities. The ALJ clarified that a sit/stand option would give Plaintiff "the option to simply sit or stand at will without leaving the workstation or being off task." AR 32. Such an option would allow Plaintiff to take breaks from standing or walking, consistent with Dr. Abeluik's proposed ten-

15

minute break limitation. Ultimately, Plaintiff asks the Court to find an ambiguity where the ALJ reasonably concluded that none existed. Because "inferences reasonably drawn from the record" support the ALJ's findings regarding the consistency of Dr. Abeluik's opinion with a sit/stand option, the Court upholds those findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (citation omitted).

In sum, the ALJ satisfied his responsibility to determine the credibility of the medical evidence and provided specific, legitimate reasons for discrediting the physician opinions outlined above.

### B. Plaintiff's Testimony

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 26. Plaintiff testified that she can walk "a couple of blocks," but then she needs 15-30 minutes of rest. AR 208. She also testified that she "cannot stand, walk or sit at a computer for more than 15-20 minutes." AR 203. Plaintiff further testified that her migraines can disable her for "days at a time" and that "[s]ometimes it can take 5 to 7 days to recover but just to have another attack again right after." AR 212. According to Plaintiff, she constantly has stroke-like symptoms (AR 51), and her migraine attacks occur up to ten times a month. AR 52.

Plaintiff generally contends that the ALJ errored by failing to credit her testimony, which according the Plaintiff establishes that her impairments preclude her from sustaining work activity for a complete work day or work week and prevent her from maintaining competitive employment. ECF 24 at 12–15.

#### 1. Legal Background

The ALJ is responsible for determining a plaintiff's credibility. *Andrews*, 53 F.3d at 1039. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ghanim*, 763 F.3d at 1163 (citation and internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no

16

evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Id.* (citation and internal quotation marks omitted). General findings are insufficient; rather, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. In other words, the ALJ must identify the non-credible testimony and the evidence that undermines it. *Ghanim*, 763 F.3d at 1163 (citation and internal quotation marks omitted). Factors the ALJ may consider in making an adverse credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* at 958–59.

### 2. Analysis

The ALJ offered specific, clear and convincing reasons for discounting Plaintiff's testimony concerning her symptoms. Plaintiff argues that the ALJ's reliance on her mental health examinations, her testimony regarding the reason she did not return to her job, her daily activities and her refusal to follow up with mental treatment are not sufficient to justify the ALJ's rejection of her testimony. ECF 24 at 13–15. While the Court finds that these are proper reasons to discredit Plaintiff's testimony, the more the more significant factor in upholding the ALJ's decision is that the foregoing reasons cited by Plaintiff are just a few of the several that the ALJ offered.

As discussed above, the ALJ evaluated the medical evidence regarding the impairments caused by Plaintiff's mental and physical health conditions. *See* section III(A)(4), *supra*. The ALJ relied on this same analysis to reject Plaintiff's "allegations of entirely disabling symptoms and limitation from her physical impairments." AR 28. The ALJ specifically cited the results from diagnostic tests on Plaintiff's left knee as well as the results of physical examinations from Dr. Jaffin, Dr. Wiseman, Dr. Chan and Dr. Abeliuk. AR 26–28. This evidence sufficiently supports the ALJ conclusion that "[t]he totality of the evidence reasonably supports a limitation to

17

less than the full range of sedentary work, with a sit-stand option." AR 28.

The ALJ also discredited Plaintiff's statements regarding the symptoms from her hemiplegic migraines. AR 28. The ALJ supported this conclusion by citing her November 1, 2012 emergency visit where she did not have symptoms of weakness or speech and/or vision disturbance, and she exhibited normal speech, sensation, gait and no focal neurological deficits. AR 708; AR 710. Plaintiff's December 19, 2013 neurology consultation also shows that Plaintiff reported that she has headaches "1-2 times per month," which "usually last[] for hours" and do "not go away without medication." AR 618. As the ALJ noted these statements contradict her testimony that it can take five to seven days for her to recover from a headache attack. AR 28. Lastly, the ALJ noted Plaintiff's repeated acknowledgement of her ability to drive (AR 47–48; AR 206) and observed that driving "involves a substantial and sustained degree of attention and concentration, and is inconsistent with the claimant's testimony regarding entirely disabling symptoms of migraine headaches with 'stroke-like symptoms 24 hours a day, 7 days a week.'" AR 28. This evidence sufficiently supports the ALJ's decision to discredit Plaintiff's testimony regarding her hemiplegic migraine symptoms.

The ALJ also cited a several inconsistences between Plaintiff's statements and the evidence in the record. AR 28–29. First, Dr. Jaffin's treatment records show that that Plaintiff had generally normal walking ability as well as the ability to jump up and down, heel-toe walk and squat and rise over several evaluations from late 2012 through December 2013, which contradicts Plaintiff's statement that she never healed or recovered from her left knee surgery. AR 28 (citing AR 483; AR 484; AR 486; AR 488–92). Second, Dr. Lui's notes show that he informed Plaintiff that "surgery would not be contraindicated for her headaches and other symptoms," which casts doubt on Plaintiff's testimony that she declined a second knee surgery based on advice from her doctor that surgery may make her headache symptoms worse. AR 29 (citing AR 616). Third, Plaintiff's daily activities, including walking for 30 minutes, three times a week, walking her dog and driving "suggest that she was more functional than she has alleged." AR 29 (citing AR 416; AR 931; AR 47–48; AR 206); *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the

workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."). Fourth, the ALJ found that the conservative treatment of Plaintiff's mental impairments such as not taking any psychotic medications "undermines the persuasiveness of her impairment allegations." AR 29–30; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted). These inconsistencies further support the ALJ's decision to discredit Plaintiff's testimony.

The Court finds that the ALJ set forth valid reasons, supported by substantial evidence in the record, for discrediting Plaintiff's testimony regarding the severity of her symptoms. As a result, the Court finds that the ALJ properly evaluated the credibility of Plaintiff's subjective complaints and provided clear and convincing reasons for discounting Plaintiff's testimony concerning her pain symptoms.

### C. Plaintiff's Husband's Testimony

Plaintiff contends that the ALJ improperly disregarded the testimony of Plaintiff's husband, Richard V. Huerta. ECF 24 at 15-17. The ALJ may consider testimony from lay witnesses such as Mr. Huerta because "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) (citation omitted). The ALJ may discount the testimony of lay witnesses provided that the ALJ "give[s] reasons that are germane to each witness." *Id.* at 919.

Here, the ALJ properly supported his decision to give little weight to Mr. Huerta's statements describing Plaintiff's functionality (AR 187-94). The ALJ described Mr. Huerta's statements and concluded that his observations were "partially consistent with the evidence or otherwise partially persuasive." AR 33. However, the ALJ gave "little weight" to Mr. Huerta's assessment of Plaintiff's "quantitative functional limitations . . . because of their inherent bias and subjectivity, lack of medically acceptable standards, and their general inconsistency with the objective medical evidence, including opinion evidence from acceptable medical sources indicating that the claimant is more functional than these lay statements suggest." *Id.* All three

19

reasons are germane to Mr. Huerta. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (upholding a decision to discredit lay witness testimony based on inconsistencies with the claimant's treatment records and the possible desire of the witness to help the claimant because of their close relationship). The ALJ's reliance on Mr. Huerta's failure to use accepted medical standards is suspect given that as a lay witness Mr. Huerta may base his testimony on his observations, rather than medical expertise. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Nevertheless, the ALJ's conclusion that the Mr. Huerta's testimony is inconsistent with the medical evidence provides sufficient justification for disregarding his testimony in light of the ALJ's detailed analysis of the medical evidence discussed previously. This reason as well as Mr. Huerta's potential bias are germane to Mr. Huerta, and thus, the ALJ properly supported his decision to discount Mr. Huerta's testimony.

### D. The ALJ's Step 4 and Step 5 Analysis

Plaintiff's argument that the ALJ failed to support his analysis under Step 4 and Step 5 relies on her earlier arguments that the ALJ improperly rejected the opinions of Dr. Guerin, Dr. Jaffin and Dr. Abeliuk. ECF 24 at 17. As discussed above in section III(A), *supra*, the Court finds that the ALJ properly evaluated those opinions and supported his conclusion regarding Plaintiff's residual functional capacity with substantial evidence. The Court likewise finds that the ALJ's conclusion under Step 4 that Plaintiff was capable of performing her past work as a hospital admitting clerk is supported by substantial evidence. Based on this conclusion, the Court does not reach the ALJ's analysis under Step 5.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendant's cross-motion for summary judgment.

**SO ORDERED.**

Dated: January 4, 2019

SUSAN VAN KEULEN
United States Magistrate Judge